UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MISTE C.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-225 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the court on a referral for a Report and Recommendation on the petition for judicial review of the decision of the Commissioner filed by the plaintiff, Miste C., on May 22, 2019. For the following reasons, the court **RECOMMENDS** that the decision of the Commissioner be **REMANDED.**

*Background*

The plaintiff, Miste C., filed applications for Disability Insurance Benefits and Supplemental Security Income on October 30, 2015, alleging a disability onset date of February 2, 2013. (Tr. 15). The Disability Determination Bureau denied Miste C.'s applications initially on December 18, 2015, and again upon reconsideration on March 31, 2016. (Tr. 15). Miste C. subsequently filed a timely request for a hearing on May 29, 2016. (Tr. 15). A hearing was held on September 13, 2017, before Administrative Law Judge (ALJ) Arman Rouf, and the ALJ issued an unfavorable decision on April 16, 2018. (Tr. 15-25). Vocational Expert (VE) Brian L. Womer appeared and testified at the hearing. (Tr. 15). The Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

Miste C. met the insured status requirements of the Social Security Act through June 30, 2016. (Tr. 18). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Miste C. had not engaged in substantial gainful activity since February 2, 2013, the alleged onset date. (Tr. 18).

At step two, the ALJ determined that Miste C. had the following severe impairments: history of cervical cancer, neuropathy, obesity, perianal and labial skin tags, perianal and vulvar lesion, perianal abscess, and right carpal tunnel syndrome. (Tr. 18). The ALJ found that the above medically determinable impairments significantly limited Miste C.'s ability to perform basic work activities and were severe for the purpose of the Social Security Act. (Tr. 18). The ALJ determined that Miste C. also had the following non-severe impairments: minimal lumbar degenerative changes, hypothyroidism, sleep apnea, reflux disease, hemorrhoid, pulmonary nodules, anal fistula, and minimal cervical spine degeneration. (Tr. 18). However, the ALJ noted that these non-severe impairments caused no more than minimal limitations on Miste C.'s functioning. (Tr. 18).

The ALJ concluded that Miste C.'s mental impairments of attention deficit hyperactivity disorder, major depressive disorder, and panic disorder with agoraphobia, considered singly and in combination, did not cause more than minimal limitations in her ability to perform basic mental work activities. (Tr. 18). The ALJ considered the paragraph B criteria for mental impairments, which include the four broad areas of mental functioning:

> understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.

(Tr. 18). The ALJ found that Miste C. had a mild limitation understanding, remembering, or applying information; a mild limitation interacting with others; a mild limitation concentrating,

persisting, or maintaining pace; and a mild limitation adapting or managing herself. (Tr. 18-19). The ALJ concluded that because Miste C.'s mental impairments caused no more than "mild" limitations in any of the functional areas they were non-severe. (Tr. 19).

At step three, the ALJ determined that Miste C. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 20). The ALJ indicated that Miste C.'s severe impairments did not meet listings 1.00(Q), 11.14, 13.23, and SSR 02-1p (obesity). (Tr. 20). The ALJ noted that the record did not establish the medical signs, symptoms, laboratory findings, or degree of functional limitation required to meet or equal the criteria of any listed impairment and that no acceptable medical source designated to make equivalency findings concluded that Miste C.'s impairments medically equaled a listed impairment. (Tr. 20).

After consideration of the entire record, the ALJ then assessed Miste C.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with standing and/or walking for a total of four hours in an eight-hour workday and sitting for a total of four hours in an eight-hour workday. The claimant can occasionally operate foot controls bilaterally. She can frequently handle, finger, and feel with the bilateral upper extremities. The claimant can frequently operate hand controls bilaterally. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can never climb ladders, ropes, or scaffolds. She must avoid unprotected heights. The claimant can occasionally operate a motor vehicle. She can tolerate occasional exposure to wetness.

(Tr. 20). The ALJ explained that in considering Miste C.'s symptoms he followed a two-step process. (Tr. 21). First, he determined whether there was an underlying physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Miste C.'s pain or other symptoms. (Tr. 20). Then

3

he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Miste C.'s functional limitations. (Tr. 20).

After considering the evidence, the ALJ found that Miste C.'s medically determinable impairments reasonably could be expected to produce her alleged symptoms. (Tr. 22). However, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 22). The ALJ found that the record indicated that Miste C.'s impairments imposed some limitations, yet those limitations were not disabling. (Tr. 22). Furthermore, the ALJ found that Miste C.'s overall treatment was not suggestive of a disability. (Tr. 23).

The ALJ concluded that Miste C. was unable to perform any past relevant work. (Tr. 23). Considering Miste C.'s age, education, work experience, and RFC, the ALJ determined that there were jobs in the national economy that she could perform, including office helper (210,000 jobs nationally), inspector/hand packer (74,000 jobs nationally), and laundry folder (51,000 jobs nationally). (Tr. 24). The ALJ found that Miste C. had not been under a disability, as defined in the Social Security Act, from February 2, 2013, through the date of the ALJ's decision, April 16, 2018. (Tr. 27).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the

correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the

claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**; *see* **Biestek v. Berryhill,** 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying his opinion regarding job availability, does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Miste C. has requested that the court remand this matter for additional proceedings. In her appeal, Miste C. has argued that: (1) the ALJ improperly evaluated medical records without reliance on expert opinion; and (2) the ALJ improperly evaluated her symptom testimony.

Miste C. has argued that the ALJ improperly evaluated the medical records relating to both her physical and mental impairments. She asserts that there were extensive records regarding new developments related to complications from her cancer treatment and her mental health and that the ALJ relied on outdated medical opinions. She contends that the ALJ relied on

the State medical consultants, Richard Wenzler, M.D. and Shayne Small, M.S., in determining her physical limitations. The ALJ assigned their opinions some weight noting that overall their opinions were supported by Miste C.'s history of cancer, pain from her perianal and vulvar injuries, and peripheral neuropathy. (Tr. 23). However, the ALJ found that her postural activities were more limited. (Tr. 23).

Miste C. has argued that although the ALJ relied on the State medical consultants, she did not start to require extensive evaluations and treatment for her perianal/rectal problems until October of 2016. Dr. Small's opinion at the reconsideration level was provided on March 31, 2016. The record clearly reflects an extensive amount of medical history relating to her perianal/rectal problems since October of 2016. *See* (Tr. 802, 1055, 855, 856, 872, 876, 1010, 1015, 1027, 1424, 1258).

Furthermore, in considering her mental impairments, the ALJ relied on State psychological consultants, Kevin Neville, Ph.D. and Maura Clark, Ph.D., who opined that Miste C.'s anxiety and affective disorders were non-severe. (Tr. 19). The ALJ afforded their opinions great weight. (Tr. 19). Miste C. asserts that almost all her mental health treatment was received after the State agency psychologists had reviewed the records. At the reconsideration level, Dr. Clark provided her report on February 9, 2016. (Tr. 124). Since that report, Miste C. indicated that she saw Dr. Antonio Recinto ten times. *See* (Tr. 907, 917, 929, 939, 949, 959, 969, 979, 989, and 999). Moreover, she asserts that the State psychologists were only aware of one monthly session when they provided their opinions that her mental impairments were non-severe. Thus, she has indicated that there were over 30 monthly sessions at the Northeastern Center that were unavailable to the State agency psychologists. *See* (Tr. 1123, 1127, 1131, 1133, 1135, 1137, 1139, 1141, 1143, 1145, 1147, 1147, 1151, 1153, 1155, 1157, 1159, 1161, 1163,

1165, 1167, 1169, 1171, 1173, 1175, 1177, 1179, 1181, 1183, 1187, 1191, 1193, 1195, and 1197).

An ALJ may not rely on outdated opinions of agency consultants "if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." ***Moreno v. Berryhill***, 882 F.3d 722, 728 (7th Cir. 2018). The Seventh Circuit has made clear that "ALJs are not qualified to evaluate medical records themselves, but must rely on expert opinions." ***Moreno***, 882 F.3d at 729 (citing ***Meuser v. Colvin***, 838 F.3d 905, 911 (7th Cir. 2016)) (remanding because the ALJ improperly "played doctor").

Here, the opinions of the State agency consultants and psychologists cannot serve as substantial evidence. The Commissioner has not indicated any other medical opinions in the record which considered the effects of Miste C.'s perianal/rectal impairments, as well as her mental impairments had on her ability to work. The Seventh Circuit precedent suggests that an ALJ errs by relying on outdated opinion evidence from State agency consultants despite the presence of significant evidence in the record that was either not available or not yet created at the time the consultant issued an opinion. *See **Campbell v. Astrue***, 627 F.3d 299, 309 (7th Cir. 2010) (noting ALJ's error in relying on opinions of State agency psychiatrist and psychologist who did not have access to subsequently created medical records from treating psychiatrist).

The later-acquired medical evidence was not submitted to the State consultants and psychologists for medical scrutiny, and the ALJ failed to explain or discuss how the later-acquired medical evidence squared with the findings of the State agency consultants. Thus, remand is warranted on this issue.

Next, Miste C. has argued that the ALJ did not properly analyze her subjective symptoms. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently

8

wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must explain his evaluation with specific reasons that are supported by the record. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). Under SSR 16-3p, an ALJ must assess the claimant's subjective symptoms rather than assessing her "credibility."

The ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce her symptoms. SSR 16-3p, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 WL 1119029, at*4, 9. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

    (i) The individual's daily activities;

    (ii) Location, duration, frequency, and intensity of pain or other symptoms;

    (iii) Precipitating and aggravating factors;

    (iv) Type, dosage, effectiveness, and side effects of any medication;

    (v) Treatment, other than medication, for relief of pain or other symptoms;

    (vi) Other measures taken to relieve pain or other symptoms;

    (vii) Other factors concerning functional limitations due to pain or other symptoms.

*See* **20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).**

Miste C. testified at the hearing about the complications connected to her cervical cancer and its treatment. Further, she testified regarding her mental health problems of anxiety, depression, and agoraphobia. The ALJ found that Miste C.'s statements regarding her subjective symptoms were not entirely consistent with the record. (Tr. 22). The ALJ discounted Miste C.'s symptom testimony because most of her exams were unremarkable, she received no treatment for her carpal tunnel, Gabapentin kept her neuropathy under control, her cancer had not reoccurred, and she engaged in a wide range of daily living activities. (Tr. 22).

First, Miste C. has argued that the ALJ failed to explain what he meant by her examinations were "rather unremarkable." She asserts that the ALJ failed to create a logical bridge from his assertion of unremarkable examinations to contrary evidence found in the record. Miste C. has indicated that the physical exam performed by consultative examiner, Vijay Kamineni, M.D., in December of 2015 and the physical exam performed by Dr. Andrea Haller, M.D. in June of 2015 showed radically different results. The ALJ cannot ignore contrary evidence which was done in this case. *See* ***Zurawski v. Halter***, 245 F.3d 881, 888 (7th Cir. 2001). Also, the ALJ failed to indicate whether he considered her subjective complaints about her mental impairments after the psychological exams showed positive signs of mental illness.

Next, she contends that the ALJ improperly discounted her subjective symptoms because there was no treatment for her carpal tunnel syndrome. Miste C. asserts that "[t]he Seventh Circuit has repeatedly held that it is improper for an ALJ to discount the symptom testimony of a claimant for lack of treatment without inquiring into the reasons for the claimant's failure to do so." (citing ***Stage v. Colvin***, 812 F.3d 1121, 1125 (7th Cir. 2016)). The claimant's course of treatment (or lack thereof) can be a basis for questioning her allegations, but the ALJ must

inquire into any reasons for that lack of treatment or non-compliance. SSR 16-3p, 2016 WL 1119029, at *7. The Commissioner does not claim that the ALJ made any inquiry into Miste C.'s lack of treatment.

Miste C. also asserts that the ALJ took the "sound-bite" approach when he concluded that Gabapentin was controlling her neuropathic pain. She recognizes that treatment notes from April 2016, October 2016, and April 2017 report that Gabapentin was controlling her pain. However, she argues that the ALJ failed to consider that there were other notes from April 2016 and July 2017 that found that she had pain that was constant, severe, aching, and burning, and that the pain increased with walking, pressure on the legs, calves, and feet in both legs and hips. (Tr. 1110, 1120). Moreover, a treatment note from June 2017 indicated that nothing seemed to relieve the pain in her legs. (Tr. 1117). The ALJ ignored evidence that undermined his ultimate conclusions. *See* **Moore v. Colvin**, 743 F.3d 1118, 1123 (7th Cir. 2014) ("The ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected.").

Finally, the ALJ concluded that Miste C. engaged in a wide range of activities of daily living that one would not expect to find in an individual too disabled to work. The ALJ noted that Miste C. did yard work, attended her children's sporting events, and coached softball. (Tr. 22). Miste C. testified that she needed help from her daughters with her daily living activities. (Tr. 51). She indicated that her oldest daughter arranged her work schedule so that she could be home during the day to help her. (Tr. 51). She also testified that her daughters helped her drive, wash dishes, fix meals, garden, grocery shop, and take care of the dogs. (Tr. 51-54, 59-60). Also, the ALJ failed to acknowledge that Miste C. testified that although she coached softball, she missed majority of the games and that if she did coach, she sat down mostly while she

11

coached. (Tr. 56-57). The ALJ simply provided a list of activities that Miste C. performed without explaining why these activities undercut her symptom testimony.

The ALJ's decision does not assure the court that he considered all the evidence relevant to the subjective symptom analysis. Without further explanation, the court is unable to trace the ALJ's path of reasoning for discounting her statements. Accordingly, the ALJ's subjective symptom analysis is not supported by substantial evidence.

Based on the foregoing reasons, the court **RECOMMENDS** that the decision of the Commissioner be **REMANDED** for further proceedings consistent with this order.

Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Incorporated*, 199 F.3d 902, 904 (7th Cir. 1999); *Johnson v. Zema Systems Corporation*, 170 F.3d 734, 739 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corporation*, 882 F.2d 258, 260-61 (7th Cir. 1989); *United States v. Johnson*, 859 F.2d 1289, 1294 (7th Cir. 1988); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

ENTERED this 5th day of August, 2020.

/s/ Andrew P. Rodovich
United States Magistrate Judge