UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MISTE N. CONLEY,

        Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of the Social Security
Administration,

        Defendant.

CAUSE NO. 1:19-CV-225 DRL-APR

OPINION & ORDER

    Miste Conley seeks judicial review of the Social Security Administration's decision denying her application for disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI. *See* 42 U.S.C. § 423(d). Ms. Conley requests benefits or alternatively remand of her claim for further consideration. Magistrate Judge Andrew P. Rodovich recommended that the court remand the decision of the Commissioner for further administrative proceedings. The court agrees and remands the case.

BACKGROUND

    Ms. Conley filed a Title II application for benefits on October 30, 2015, which was denied initially on December 18, 2015, and again upon reconsideration on March 31, 2016 (R. 15). An Administrative Law Judge (ALJ) heard her claims on September 13, 2017 (*id.*). In an April 16, 2018 decision, the ALJ denied Ms. Conley's petition on the basis that she could not show that she was disabled as defined by the Social Security Act (R. 16).

    The ALJ found that Ms. Conley has the following severe impairments: history of cervical cancer, neuropathy, obesity, perianal and labial skin tags, perianal and vulvar lesion, perianal abscess,

and right carpal tunnel syndrome. The ALJ found that she had other non-severe impairments. Further, the ALJ found that she had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with standing and/or walking for a total of four hours in an eight-hour workday and sitting for a total of four hours in an eight-hour workday (R. 20). She could occasionally operate foot controls bilaterally. She could frequently handle, finger, and feel with the bilateral upper extremities. She could frequently operate hand controls bilaterally. She could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She could never climb ladders, ropes, or scaffolds. She used to avoid unprotected heights. She could occasionally operate a motor vehicle. She could tolerate occasional exposure to wetness.

The ALJ found that Ms. Conley's RFC prevented her from performing her past relevant work but found that she could perform a significant number of jobs in the national economy (R. 24). This decision became final when the Appeals Council denied a request for review (R. 1).

Ms. Conley argued to the magistrate judge that the ALJ's decision should be reversed and remanded for further administrative review. She said: (1) the ALJ did not explain what he meant when he said her examinations have been unremarkable and that the medical evidence showed significant problems that affected her ability to sustain work; (2) the ALJ did not inquire into the reasons she did not receive treatment for her carpel tunnel syndrome; (3) the ALJ did not adequately account for the times she said Gabapentin did not control her neuropathic pain; (4) the ALJ did not adequately account for related problems to her past cancer diagnosis and treatment; and (5) the ALJ did not consider that her daily activities, which he found inconsistent with her alleged disabilities, require help and substantial time off. She also argued that the ALJ improperly evaluated medical records without reliance on expert opinion.

In response to Ms. Conley's arguments, the magistrate judge decided that the "ALJ's decision does not assure the court that he considered all the evidence relevant to the subjective symptom

analysis. Without further explanation, the court is unable to trace the ALJ's path of reasoning for discounting her statements. Accordingly, the ALJ's subjective symptom analysis is not supported by substantial evidence." (ECF 19 at 12).

The Commissioner objected to the magistrate judge's recommendation. The Commissioner objected to the magistrate judge's (1) interpretation of *Moreno v. Berryhill*, 882 F.3d 722 (7th Cir. 2018); (2) suggestion that the ALJ inappropriately relied on outdated state agency psychological consultant opinions when finding Ms. Conley's mental impairment non-severe; (3) conclusion that the ALJ ignored different findings from Dr. Kamineni's December 2015 consultative examination and from Dr. Haller's June 2015 examination; (4) critique of the ALJ for not inquiring into why Ms. Conley received no treatment for carpal tunnel syndrome; (5) finding that the ALJ ignored evidence of leg pain, not entirely controlled with Gabapentin, that conflicted with the ALJ's conclusions; and (6) finding that the ALJ did not sufficiently explain why Ms. Conley's varied daily activities support a finding that she is not disabled (ECF 20).

STANDARD

Magistrate Judge Rodovich had jurisdiction pursuant to this court's order of referral for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). The court now must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

The court has authority to review the ALJ's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*,

539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusions," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge from the evidence to conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed by the Secretary as conclusively disabling, given the claimant's residual functional capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, where the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See id.*

To begin, an ALJ needn't discuss every piece of evidence in the record. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). But an ALJ must "confront the evidence that does not support [his] conclusion and explain why that evidence was rejected." *Id.* It is error for him to analyze only the evidence that supports his conclusion while ignoring the evidence that undermines it. *Id.* That is the case here.

4

1.  *Findings based on* Moreno.

The Commissioner first objects to the magistrate judge's citation to *Moreno v. Berryhill*, 882 F.3d 722, 729 (7th Cir. 2018), for the proposition that "ALJs are not qualified to evaluate medical records themselves, but must rely on expert opinions" (ECF 20 at 2 (citing ECF 19 at 8)). This phrase was removed from *Moreno*.[1] According to the Commissioner, by relying on this statement that the court removed in *Moreno,* the magistrate judge incorrectly concluded the ALJ erred by not submitting later-acquired medical evidence to the state agency consultants or other medical expert.

The Commissioner is right that an ALJ is not required to rely solely on medical opinions. "In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions." *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). In fact, the regulations explicitly reject such a limitation on an ALJ's consideration. *See* 20 C.F.R. § 404.1520b (explaining that "all of the evidence" is to be examined, including medical opinion).

To the extent the magistrate judge relied on the removed language from *Moreno*, that was an oversight aided now by the parties' briefing; but the court does not read the magistrate judge's recommendation so narrowly as to be hinged on that proposition. Instead, the magistrate judge concluded that the ALJ relied on the state agency consultants and psychologists without considering the medical evidence in the record obtained after those opinions were rendered. To the magistrate judge's very point, an ALJ must consider contradictory evidence or later-acquired evidence if it's

---

[1] As Ms. Conley points out in her response to the Commissioner's objections, this phrase was included in *Moreno* originally, but it was removed after the Commissioner filed a petition for a panel rehearing. *See Moreno v. Berryhill*, 2018 U.S. App. LEXIS 9296, 1 (7th Cir. Apr. 13, 2018). The original opinion was amended and the previous sentence, "We have made clear, however, that ALJs are not qualified to evaluate medical records themselves, but must rely on expert opinions," was changed to, "That assessment was not justified under the circumstances of this case." *Id.* The court appreciates both parties' clarification on this issue.

5

significant. "An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018); *see also Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after the ALJ failed to submit new MRI to medical scrutiny); *Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010) (noting the ALJ did not adequately explain why he relied on the opinions of the state agency psychiatrist and psychologist when records of the plaintiff's mental health postdated those opinions).

Regarding Ms. Conley's perianal/rectal impairments, the magistrate judge found that Ms. Conley did not start to require extensive evaluations and treatment for her perianal/rectal problems until October 2016—after Dr. Small's opinion at the reconsideration level was provided on March 31, 2016. And since October 2016, the record shows she had extensive medical treatment related to her perianal/rectal impairments (R. 802, 1055, 855, 856, 872, 876, 1010, 1015, 1027, 1424, 1258). While the Commissioner does correctly state that the ALJ need not require medical opinion on the subject, the ALJ still must consider contradictory evidence or evidence post-dating the state agency consultant's evaluations. The ALJ recited Ms. Conley's medical history involving her perianal/rectal impairments up to June 2017 and concluded that at her oncology follow up that month Ms. Conley "reported feeling exceptionally well and was asymptomatic." He cited notes from Ms. Conley's visit to a physician in June 2017 (R. 22, 1033). He did not, however, mention any of the subsequent treatment related to Ms. Conley's perianal/rectal impairments that postdated June 2017, including procedures in August and September 2017 (R. 1265, 1302). *See Moore*, 743 F.3d at 1123 ("the ALJ erred in utterly failing to even acknowledge the contrary evidence").

The ALJ's conclusion that "[h]er oncology follow ups throughout 2017 were unremarkable" does not rectify the missing evidence because that statement is followed by a citation to evidence dating up to June 13, 2017. And such a vague statement does not adequately build a logical bridge from the evidence to the conclusion. *See Thomas*, 745 F.3d at 806. Likewise, the Commissioner didn't object to the magistrate judge's conclusion that "[t]he record clearly reflects an extensive amount of medical history relating to her perianal/rectal problems since October of 2016" (ECF 19 at 7). Given that the ALJ didn't properly explain why Ms. Conley's medical treatment post-June 2017 didn't affect his conclusion, the case must be remanded. *See Moore*, 743 F.3d at 1123.

2. *Finding that the ALJ relied on outdated opinions.*

Regarding Ms. Conley's mental impairments, the Commissioner objects to the magistrate judge's suggestion that the ALJ inappropriately relied on outdated state agency psychological consultant opinions. The ALJ gave great weight to state agency psychologists Dr. Kevin Neville and Dr. Maura Clark, who opined that Ms. Conley's anxiety and affective disorders were non-severe (R. 19). Dr. Neville provided his report on November 30, 2015, and Dr. Clark provided her report on February 9, 2016 (R. 98, 112). After these reports, Ms. Conley saw Dr. Antonio Recinto roughly ten times and had 30 monthly sessions at the Northeastern Center regarding her mental impairments. Ms. Conley points out that she visited Dr. Denise Wells on April 20, 2017, when Dr. Wells reported that Ms. Conley said "her anxiety is so high, she cannot leave the house" (R. 1146). *See also* ECF 14 at 18 (Ms. Conley's opening brief).

It's true that neither Dr. Neville nor Dr. Clark considered this information, along with the dozens of other mental health visits, but the ALJ's opinion shows that he did consider it. He gave great weight to Dr. Neville and Dr. Clark but stated that "the claimant received some treatment for these impairments during the relevant period, they did not interfere with her functioning more than mildly" (R. 20). The ALJ cited exhibits 39F and 44F, Dr. Recinto's notes (dated March 2016 to May

2017) and Dr. Wells' notes (dated November 2015 to July 2017), which are the visits that Ms. Conley says the ALJ didn't consider. The ALJ also states "the claimant reported she does not handle stress or changes in routine well," and "[t]herefore, the claimant has no more than mild limitation adapting or managing herself" (R. 19). Again, the ALJ cited exhibit 44F, Dr. Wells' notes. The ALJ thus considered the evidence received after Dr. Neville and Dr. Clark opined on Ms. Conley's mental impairments. *See Moreno*, 882 F.3d at 728.

Even more, neither Ms. Conley nor the recommendation here cites any information contained in the later-acquired evidence about Ms. Conley's mental health treatments that contradicts the ALJ's conclusion that her impairment imposed only a mild limitation. Ms. Conley says in her opening brief she pointed to medical evidence of numerous dispositive signs of mental illness on exam. That evidence of "mood problems" and "anxious effect" is found in documents cited by the ALJ in his opinion. In other words, he considered that information. Nothing in those documents show new medical information or diagnoses that differed from the information available to Dr. Neville and Dr. Clark. *Cf.* R. 88 (listing anxiety and affective disorders) *with* R. 609, 618, 913, 1123, 1123, 1201 (noting anxiety and mood issues). The ALJ credited Ms. Conley's mental health impairments, just not to the extent she wishes. The ALJ stated that her "mental impairments cause no more than 'mild' limitation in any of the functional areas, they are nonsevere" (R. 19). Ms. Conley doesn't cite to contradictory evidence. Thus, substantial evidence supports the ALJ's decision that Ms. Conley's mental impairments were nonsevere. *See Kolar v. Berryhill*, 695 F. Appx. 161, 162 (7th Cir. 2017) ("Almost any conclusion an ALJ reaches in such situations may be inconsistent with some evidence in the record and consistent with other evidence. This is where the substantial-evidence standard of review matters.").

    3. *Finding that the ALJ ignored exams from Dr. Kamineni and Dr. Haller.*

The Commissioner objects to the magistrate judge's finding that the ALJ didn't consider physical exams performed by Dr. Andrea Haller, M.D. in June 2015, which Ms. Conley says conflicted with consultative examiner, Vijay Kamineni, M.D. in December 2015. The ALJ in his opinion specifically referenced Dr. Kamineni and his neurological examination when the ALJ concluded Ms. Conley exhibited full strength and normal range of motion among other normal conditions (R. 21). Earlier in his opinion, the ALJ cited exhibit 19F/15 (R. 572), a report by Dr. Haller, for the proposition that "[i]n June 2015, the claimant demonstrated areas of anesthesia to light touch, temperature, and pinprick in the right lower extremity in a stocking distribution" (R. 21). The ALJ did not further reference Dr. Haller's physical examination. By at least citing Dr. Haller's examination, the ALJ showed he considered Dr. Haller's evaluation. But Dr. Haller's and Dr. Kamineni's exam results were different: Dr. Haller reported absent ankle jerks bilaterally, a Hoffman sign appreciated on the left, a clonus appreciated, mild Romberg, positive Tinel's test at the left wrist and left elbow, and positive Palen's test bilaterally (R. 572). Dr. Kamineni didn't report any of these issues (R. 589). As such, some of the findings of Dr. Haller seem inconsistent with the findings of Dr. Kamineni. At the very least, the ALJ needed to engage these contradictory findings and explain why he was rejecting Dr. Haller's report. *See Moore*, 743 F.3d at 1123. He didn't create a logical bridge between the evidence and his conclusion.

The Commissioner did not contest the magistrate judge's finding that the ALJ didn't consider Ms. Conley's subjective complaints on psychological exams that showed positive signs of mental illness (ECF 19 at 10). The court needn't then address it. *See* 28 U.S.C. § 636(b) ("A judge of the court shall make a de novo determination of *those portions* of the report or specified proposed findings or recommendations to which objection is made.") (emphasis added).

    4. *Finding that the ALJ did not inquire into lack of treatment for carpal tunnel syndrome.*

The Commissioner also objects to the magistrate judge's finding that the ALJ did not inquire into why she did not receive treatment for carpal tunnel syndrome. The ALJ stated in his opinion that "[s]he has received no surgical treatment for her right carpal tunnel syndrome" (R. 22). But as the law requires, "the ALJ must not draw any inferences about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (quotations omitted). The Commissioner concedes that ALJ didn't inquire into Ms. Conley's reasons for not obtaining surgical treatment for carpal tunnel syndrome. As such, the ALJ erred. *See Stage v. Colvin,* 812 F.3d 1121, 1125 (7th Cir. 2016) ("The ALJ erred similarly by disregarding [the claimant's] need for hip replacement because she had not actually undergone surgery without exploring why she had not."); *see also* S.S.R. 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."). The court needn't decide whether the ALJ credited Ms. Conley's subjective symptoms of carpal tunnel syndrome because on remand the inquiry into her reasons for not obtaining surgery may affect the ALJ's decision to credit her testimony.

    5. *Finding that the ALJ ignored evidence of leg pain, not entirely controlled by Gabapentin.*

Regarding Ms. Conley's neuropathic pain, the magistrate judge found that the ALJ erred by concluding Gabapentin was controlling her pain despite her subjective symptoms indicating otherwise. The ALJ considered one treatment note from April 2017 that Gabapentin was controlling Ms. Conley's pain (R. 22) (citing R. 786). He did not, however, explain his decision for rejecting three other notes that are contrary to his conclusion, specifically ones from June and July 2017 and April 2016 (R. 1117, 1110, 1120). Those stated that she continued to experience pain. The ALJ did note that Ms. Conley "testified her neuropathy never goes away," but that isn't the same as considering whether she continues to experience pain even on Gabapentin. And as such, the ALJ did not confront the

evidence that was contra his conclusion. *See Moore*, 743 F.3d at 1123. The Commissioner says there's other information in the record that supports the ALJ's decision, but the court won't go outside the ALJ's opinion and decision. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). This requires removal too.

   6. *Finding that the ALJ did not sufficiently explain Ms. Conley's varied daily activities.*

Last, the Commissioner argues that the ALJ properly explained why Ms. Conley's daily activities support a finding that she is not disabled. In his opinion, the ALJ listed activities that Ms. Conley had performed in the past: yard work, attending sporting events, and coaching softball. The ALJ did not confront the evidence that her anxiety at times kept her from leaving the house and missed softball games because of that (R. 1146). Likewise, Ms. Conley testified that she needs help from her daughters with her daily activities and that she is rarely home alone (R. 51). She said she gets help with driving, washing the dishes, gardening, grocery shopping, and taking care of the dogs. *Id.* The ALJ should've confronted this evidence and explained why he was not crediting it. *See Moore*, 743 F.3d at 1123.

## CONCLUSION

Because the ALJ didn't build a logical bridge from the evidence to his conclusion, the court ACCEPTS the magistrate judge's report and recommendation (ECF 19) and OVERRULES the Commissioner's objections to the report and recommendation, EXCEPT as modified herein (ECF 20). Accordingly, the court REMANDS the case to the ALJ for a rehearing consistent with this opinion.

SO ORDERED.

October 30, 2020            *s/ Damon R. Leichty*
                      Judge, United States District Court